BARRETTO v. MOUQUIN-OFFERMAN-WELLS COAL CO.

(Supreme Court, Appellate Division, Second Department.   January 20, 1911.)

1. NEGLIGENCE (§ 85*)—CONTRIBUTORY NEGLIGENCE—CHILDREN.
   The law will not presume that a girl 3½ years old could use such care that, if not exercised, it would justify an inference of negligence, where she failed to detect an approaching wagon and to appreciate that it would come in contact with her.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–129; Dec. Dig. § 85.*]

2. DEATH (§ 99*)—DAMAGES—INFANT.
   A verdict for $2,500 for the death of a girl 3½ years old is excessive, and must be reduced to $1,500.
   [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Appeal from Trial Term, Kings County.

Action by Peter Barretto, as administrator of Margurite Barretto, deceased, against the Mouquin-Offerman-Wells Coal Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Conditionally affirmed.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Frederick Hulse, for appellant.

Felix Reifschneider, Jr., for respondent.

THOMAS, J.   A bright and active girl, 3½ years old, usually not allowed unattended to leave her home, was sitting on a sidewalk nearly in front of the tenement where her parents lived, when defendant's coal wagon approached so near as to pass over her legs, which were projecting beyond the curb.   Does the law presume that such a child, under the facts presented, could use care sufficient, if not exercised, to justify an inference of negligence, to detect the wagon, and to appreciate that its continuance on its course in close proximity to her feet would cause it to come in contact with them and do injury, and that she could intelligently escape it?   To hold her capable of care, she must have usable capacity (1) for some prudence and inclination therefor, in keeping traffic under observation; (2) for measuring in distance the relation of the wagon to the curb; (3) for apprehending that the proximity of the wagon to the curb was such that her protruding feet would fall within the intervening distance; and (4) ability to withdraw herself from the danger.   It is not a question whether such a child can ever use care, but the facts in this case do not permit the inference that she had such ability to a degree that demanded care on her part.

Whether a child should know a given danger and use some care to avoid it depends upon elements that constitute it.   From no intelligence a child progresses in experience, and thereby step by step learns what is hurtful and what she should avoid, and she gains control of herself for protection, and, making allowance for the known intentness of children upon their immediate amusements, the child

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

is judged by such experience. She early learns that she should not put her hand in fire, and if, unless through uncertainty in controlling her locomotion, she place her hand in fire, she would be held to some care, not that of an adult, as the child is not expected to have in mind to the same extent surrounding dangers, even if she knew them to be such. But little by little her knowledge of sources of danger progresses. She appreciates first the danger of the direct act; that is, that if she does a simple thing or omits it she will be hurt. But accidents are usually the result of a combination of co-operating circumstances. To appreciate such result she must have gained the synthetic capacity. She must by experience have passed on from simple to complex conceptions. She may at quite an early age be able in her little sphere and environment to combine one known thing with another and form an infantile judgment.

Such conceptions, however, usually relate to the familiar matters of the home, but the activities beyond that, for instance, in the street, are as to their causes and effects quite unknown and are like mere passing pictures. But even as to these she gains in time knowledge, trifling and inaccurate at first, and from which she can form no conception as to their safety or danger; but the enlargement of her contact with them increases her ability to conceive of their relation to themselves and to her. She would learn after repeated use of the streets, and the warnings that are given in her presence, or from observing the conduct of others, that moving objects must be avoided, the manner of avoiding them, the care required, and the distances she must keep from them to escape. So she goes on maturing in ability to form judgments and to act upon them until she reaches such ability as belongs to youth, gradually passing on into such maturity as brings the full responsibility that attaches to persons who are sui juris.

The facts in the case at bar do not indicate that this little girl, intended to be kept by her mother's side, or under her eye in the house, or in her custody if taken beyond it, could have learned that on the sidewalk she should, if her feet projected, watch lest a team should drive so near the curb as to encounter them. If she did in fact see a team so near as to frighten her, she would know that her feet should be drawn out of the way. But she could not be deemed competent to watch for it in anticipation of its coming. But, assume that she did see it approaching, she would not be able to gauge its distance from her, so as to conclude that she should take measures to avoid it. There enter into such considerations the further element that so young a child is in her nature concerned only with what she is doing and the recognized fact that such abstraction is not disturbed by a sense of watchfulness, and that, even if aroused by finding horses and wagons upon her, she might well err, in time or in action, in escaping from them, and it is impossible to conclude that she would be capable of any appreciable self-protection, such as, in quality or quantity, a jury could measure. She may have been capable of some care, but it was negligible.

The verdict was for $2,500. There is no specific evidence that supports a verdict for such an amount for a child of such years. The jury must decide upon general considerations. For some years she would deduct rather than add by her labor to her father's pecuniary condition. During her school life, expectable in this country, her helpfulness would be something; but it would not be until she had grown to maturity that she could have a real working capacity, at home or elsewhere. If the verdict had been $1,500, the principal and interest on it accruing from the time of her death would be a sum equal or beyond what her father would have gained from the service she owed him. Indeed, a much smaller amount would have quite equaled any legitimate expectation of gain, and conjecture is excluded.

The judgment and order should be reversed, and a new trial granted, costs to abide the event, unless within 20 days plaintiff stipulate to reduce the verdict to $1,500, in which event the judgment and order are affirmed, without costs. All concur.

